# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| **AIMEE HIGBY, #331959,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 3:24-cv-01394** |
| | ) | **Judge Trauger** |
| **LINCOLN COUNTY SHERIFF, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION AND ORDER

Pro se plaintiff Aimee Higby, while she was in custody at the Lincoln County Jail,[1] filed a civil rights complaint under 42 U.S.C. § 1983 (Doc. No. 1) and an application for leave to proceed in forma pauperis (IFP). (Doc. No. 2.)

The case is before the court for ruling on the plaintiff's IFP application and for initial review of the Complaint under the Prison Litigation Reform Act (PLRA), 28 U.S.C. § 1915A.

### I. PAUPER STATUS

Subject to certain statutory requirements, *see* 28 U.S.C. § 1915(a)(1)–(2), (g), a prisoner bringing a civil action may be permitted to proceed as a pauper, without prepaying the $405 filing fee. The plaintiff's IFP application substantially complies with these requirements and demonstrates that she lacks the funds to prepay the entire filing fee. Her IFP application (Doc. No. 2) is therefore **GRANTED**.

Nevertheless, prisoners bringing civil lawsuits are "required to pay the full amount of a filing fee." 28 U.S.C. § 1915(b)(1). Where the prisoner proceeds IFP, the fee is $350 instead of

---

[1] On March 7, 2025, the court received the plaintiff's notice that she had been moved to Bledsoe County Correctional Complex and needed to update her mailing address. (Doc. No. 8.)

$405, *see id.* § 1914(a)–(b) & Dist. Ct. Misc. Fee Schedule, provision 14 (eff. Dec. 1, 2023), and may be paid in installments over time via an assessment against her inmate trust account. *Id.* § 1915(b)(1)–(2).

Accordingly, the plaintiff is **ASSESSED** a $350 filing fee. The fee will be collected in installments as described below.

The warden of the facility in which the plaintiff is currently housed, as custodian of her trust account, is **DIRECTED** to submit to the Clerk of Court, as an initial payment, the greater of: (a) 20% of the average monthly deposits to the plaintiff's credit at the jail; or (b) 20% of the average monthly balance to the plaintiff's credit for the six-month period immediately preceding the filing of the Complaint. 28 U.S.C. § 1915(b)(1). Thereafter, the custodian shall submit 20% of the plaintiff's preceding monthly income (or income credited to the plaintiff for the preceding month), but only when the balance in her account exceeds $10. *Id.* § 1915(b)(2). Payments shall continue until the $350 filing fee has been paid in full to the Clerk of Court. *Id.* § 1915(b)(3).

The Clerk of Court **MUST** send a copy of this order to the warden of the facility in which the plaintiff is currently housed to ensure compliance with that portion of 28 U.S.C. § 1915 pertaining to the payment of the filing fee. If the plaintiff is transferred from her present place of confinement, the custodian must ensure that a copy of this order follows the plaintiff to her new place of confinement, for continued compliance with the order. All payments made pursuant to this order must be submitted to the Clerk of Court for the United States District Court for the Middle District of Tennessee, 719 Church Street, Nashville, TN 37203.

## II. INITIAL REVIEW

A. <u>Legal Standard</u>

In cases filed by prisoners, the court must conduct an initial screening and "identify

cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint" or any portion of it is facially frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915A; *see also* 42 U.S.C. § 1997e(c). Review under the same criteria is also authorized under 28 U.S.C. § 1915(e)(2) when the prisoner proceeds IFP.

To determine whether the Complaint states a claim upon which relief may be granted, the court reviews for whether it alleges sufficient facts "to state a claim to relief that is plausible on its face," such that it would survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A viable claim is stated under 42 U.S.C. § 1983 if the Complaint plausibly alleges (1) a deprivation of a constitutional or other federal right, and (2) that the deprivation was caused by a "state actor." *Carl v. Muskegon Cnty.*, 763 F.3d 592, 595 (6th Cir. 2014).

At this stage, "the Court assumes the truth of 'well-pleaded factual allegations' and 'reasonable inference[s]' therefrom," *Nat'l Rifle Ass'n of Am. v. Vullo*, 602 U.S. 175, 181 (2024) (quoting *Iqbal*, 556 U.S. at 678–79), but is "not required to accept legal conclusions or unwarranted factual inferences as true." *Inner City Contracting, LLC v. Charter Twp. of Northville, Michigan*, 87 F.4th 743, 749 (6th Cir. 2023) (citation omitted). The court must afford the pro se Complaint a liberal construction, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), while viewing it in the light most favorable to the plaintiff. *Inner City*, *supra*.

B. <u>Facts</u>

The plaintiff alleges that, when she was confined in the Franklin County Jail in July 2023, she was "placed in a suicide smock [and] was then evaluated by crisis services and Cornerstone," which both recommended that she be transferred to Moccasin Bend for mental health treatment.

3

(Doc. No. 1 at 9.) The plaintiff was transferred to Lincoln County Jail in August 2023, where she received a video call from Dr. Cannon at Moccasin Bend, stating that there was a bed available if the plaintiff could get there. (*Id.*) However, the medical staff at the Jail determined that they would treat the plaintiff and would not send her for outside treatment. (*Id.*) The plaintiff was placed in isolation, on suicide watch, and was forced to eat until she vomited. (*Id.* at 9–10.) During this period of isolation, the plaintiff was only permitted to shower three times in twenty-four days, was allowed to use the phone only twice, and was denied medication and a cleaning cart, even though the cell she was in had not been cleaned between occupants. (*Id.* at 10.) The plaintiff was then taken to court, where the prosecutor informed the court that the plaintiff was awaiting a psychiatric evaluation, but did not discuss the Lincoln County Jail's provision of subpar treatment and refusal to send her to Moccasin Bend. (*Id.*)

The plaintiff was moved to the Marshall County Jail that same month, August 2023. (*Id.* at 11, 17.) In October 2023, she was taken to a psychiatric evaluation where the transport officer held her cellphone out to record what the plaintiff said to the evaluator. (*Id.* at 12.) The evaluator asked the officer to go out in the hallway, but the officer stood in the doorway and continued to hold out her cellphone. (*Id.*) The evaluator recommended the plaintiff be further evaluated "to see if [she] needed meds or therapy," but that recommendation was not followed at the Marshall County Jail, where the plaintiff was told that only the doctor, not Jail nurses, could prescribe treatment. (*Id.* at 12–13.)

Beginning in May 2023, the plaintiff repeatedly told the Lincoln County Circuit Court that she wanted to terminate her defense attorney, and everyone involved in the plaintiff's criminal case was notified of her position that the District Attorney's Office should not be allowed to prosecute the case due to a conflict of interest. (*Id.* at 14–15.) The plaintiff's bond was originally

4

set at an agreed amount of $25,000, but she was charged with additional crimes and her bond amount was increased to $4 million. (*Id.* at 16.)

On May 19, 2024, the plaintiff was assaulted by another inmate in the Marshall County Jail. (Doc. No. 1 at 18.) A guard subsequently noticed her bruised face and reported the event, and the plaintiff was taken to medical and seen by a nurse, who noted that the bruise was healing. (*Id.*) The plaintiff did not receive an x-ray or an examination by a physician after the assault, and she "still ha[s] marks and headaches." (*Id.* at 18, 20.)

In September and October of 2024, the plaintiff's "legal and religious" documents and mail were "censored, sh[r]edded and t[h]rown away." (*Id.* at 19.) She alleges that "[t]his 1983 document was sh[r]edded and the concern was where did I get it and once I went above it was okay I had to provide info to help them dow[n]load another copy." (*Id.*) A "package" she sent to the judge in her state criminal case was not delivered, and when the plaintiff asked someone about it, she was told, "[W]e can just throw your mail away really." (*Id.*)

The plaintiff claims that she should have received medical treatment and mental health treatment as recommended, but because she did not receive treatment at Moccasin Bend when she was detained in the Franklin and Lincoln County jails, or further evaluation for treatment after her psychiatric evaluation while detained in Marshall County, her conditions worsened and "it will take longer to get back on medication and level out and deal with the trauma all this has caused." (*Id.* at 20.) She claims that every time she is taken away from "therapy support, classes," and medication at a jail, she has to "start all over," which results in confusion about "what is regained and what is gone," and what the appropriate medication levels are. (*Id.* at 20, 21.)

5

C. <u>Analysis</u>

The court first notes that the Complaint's allegations of injuries sustained during the plaintiff's detention in Franklin and Lincoln Counties, and during the beginning of her detention in Marshall County, triggered a statute of limitations that ran before the Complaint was filed. "Although the statute of limitations is an affirmative defense that a plaintiff ordinarily need not plead to state a claim, dismissal of the plaintiff's claim is appropriate when 'the allegations in the complaint affirmatively show that the claim is time-barred.'" *Wershe v. City of Detroit, Michigan*, 112 F.4th 357, 364 (6th Cir. 2024), *cert. denied sub nom. Wershe v. Detroit*, 145 S. Ct. 1128 (2025) (citing *Baltrusaitis v. Int'l Union, United Auto., Aerospace & Agric. Implement Workers*, 86 F.4th 1168, 1178 (6th Cir. 2023)). No statute of limitations expressly applies to claims under Section 1983, which instead "borrows the personal-injury statute of limitations from the state in which the claim arose." *Id.* at 365 (quoting *Zappone v. United States*, 870 F.3d 551, 559 (6th Cir. 2017)).

In Tennessee, the applicable limitations period is one year from the date of the claim's accrual. *Dibrell v. City of Knoxville, Tennessee*, 984 F.3d 1156, 1161 (6th Cir. 2021) (citing Tenn. Code Ann. § 28-3-104(a)(1)). Federal law determines the accrual date, and it is well established in the Sixth Circuit that "a § 1983 federal civil rights claim accrues 'when the plaintiff knows or has reason to know of the injury which is the basis of his action.'" *Johnson v. Memphis Light Gas & Water Div.*, 777 F.3d 838, 843 (6th Cir. 2015) (quoting *Roberson v. Tennessee*, 399 F.3d 792, 794 (6th Cir. 2005)). The limitations period thus begins to run on "the date that the plaintiff discovered, or reasonably should have discovered, basic facts about the claim" to a compensable injury, *Reguli v. Russ*, 109 F.4th 874, 879 (6th Cir. 2024), "not when the [injury's] consequences become most painful." *Frasure v. Shelby Cnty. Sheriff's Dep't*, 4 F. App'x 249, 250 (6th Cir. 2001) (citing *Chardon v. Fernandez*, 454 U.S. 6, 8 (1981)).

Here, the Complaint was filed in late-November 2024. (*See* Doc. No. 1 at 28–29.) Accordingly, any claims that accrued in Franklin or Lincoln County in July and August 2023 are time-barred. In addition, claims that concern the plaintiff's representation during Lincoln County criminal proceedings and the amount of her bond set in that court are habeas claims not appropriately raised in this civil rights lawsuit; in any event, such claims are moot after the plaintiff's conviction and sentence to the Tennessee Department of Correction.[2]

The claims of the Complaint that are not untimely or moot are those that concern the treatment of the plaintiff's psychiatric condition at the Marshall County Jail during and after November 2023; the treatment of her physical condition in the wake of her May 2024 assault by a fellow Marshall County Jail inmate; and the censoring or destruction of her mail in the Marshall County Jail.

1. <u>Medical care</u>

Pretrial detainees have a Fourteenth Amendment right to be free from deliberate indifference to serious medical needs. *See Hyman v. Lewis*, 27 F. 4th 1233, 1237 (6th Cir. 2022). To state a claim for a violation of this right, the plaintiff must allege that: (1) she had a sufficiently serious medical need; and (2) a defendant "acted deliberately (not accidentally), [and] also recklessly in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known." *Helphenstine v. Lewis Cnty., Ky.*, 60 F.4th 305, 317 (6th Cir. 2023) (internal citations and quotation marks omitted).

With regard to the plaintiff's mental health, the only allegations that appear timely in relation to the Complaint's filing are that Marshall County Jail nurses did not follow an outside

---

[2] TDOC's Felony Offender Information Lookup, https://foil.app.tn.gov/foil/details.jsp (last visited June 12, 2026), of which the court takes judicial notice, *see ARJN #3 v. Cooper*, 517 F. Supp. 3d 732, 747 (M.D. Tenn. 2021), reveals that the plaintiff's sentence on three felony convictions was imposed on December 5, 2023.

psychiatric evaluator's recommendation that the plaintiff be further evaluated "to see if [she] needed meds or therapy," and that those nurses told the plaintiff she would need to see the doctor in order to get those types of treatment. (Doc. No. 1 at 12–13.) By its own terms, the recommendation that the plaintiff be further evaluated to determine her need for psychiatric treatment would seem inconsistent with a plausible claim that she had a sufficiently serious need for such treatment. Even though she had previously required suicide precautions elsewhere, when she was "brought to medical" at the Marshall County Jail the plaintiff "was reminded" that, if she were truly having suicidal thoughts, "they would have to make calls and see what to do about the situation[]," so she felt that she "could not talk freely." (*Id.* at 17.) These allegations do not plausibly establish that any defendant acted deliberately and recklessly in the face of a known or obvious, "unjustifiably high risk" that the plaintiff faced in the absence of mental health medications or therapy. *Helphenstine*, 60 F.4th at 317.

As to her physical health, the plaintiff alleges that she suffered facial bruises as a result of an attack by another inmate in May 2024, and that she still had headaches six months later. But she also alleges that she did not pursue medical treatment in the aftermath of the attack; rather, she was taken for medical examination "[w]hen a guard noticed [her] bruised face and reported the event." (Doc. No. 1 at 18.) Even assuming *arguendo* that the plaintiff had a sufficiently serious need for medical treatment, she claims to have been seen by a nurse who examined her bruises and noted that "they were healing." (*Id.*) The fact that she did not receive an x-ray or an examination by a physician does not plausibly establish that any defendant acted deliberately and recklessly in the face of "an unjustifiably high risk of harm" from her facial injury that was known or obvious. *Helphenstine*, 60 F.4th at 317.

8

2. <u>Interference with documents and mail</u>

The plaintiff's allegations concerning legal and religious documents/mail being censored, destroyed, or discarded do not support any plausible claim to relief. Her only specific allegations of misconduct involved the shredding of a Section 1983 document that Jail staff apparently replaced after the plaintiff "help[ed] them download another copy"; the redacting of a document mailed to the plaintiff; the accidental discarding of a piece of mail intended for her; and the failure to deliver a package the plaintiff sent to her trial judge. (Doc. No. 1 at 19.) These isolated incidents of misfeasance or tampering with/interruption of mail delivery cannot plausibly establish any violation of the plaintiff's constitutional rights. *See Parker v. Pugh*, No. 2:22-CV-00722-CLM-HNJ, 2024 WL 1600333, at *14, 16 (N.D. Ala. Jan. 31, 2024), *report and recommendation adopted*, 2024 WL 915555 (N.D. Ala. Mar. 4, 2024) (citation omitted) (finding that "an isolated incident of mail tampering is usually insufficient to establish a constitutional violation," and recommending judgment for defendants where plaintiff failed to show that prison officials "practiced a policy of withholding or interfering with [his] mail or that any named defendant intentionally interfered with [his] mail," but only identified "two instances of prison officials delaying the issuance of his legal mail for more than a week"); *see also Hatcher v. Roller*, No. 2:14-CV-204-TWP, 2015 WL 5703266, at *4 (E.D. Tenn. Sept. 28, 2015) (finding isolated incident of tampering with legal mail insufficient to establish a constitutional violation, which requires showing that prison official "regularly and unjustifiably" interfered with legal mail) (quoting *Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003)).

In sum, the Complaint fails to state a viable claim under Section 1983 and must be dismissed.

### III. CONCLUSION

For the reasons given above, this action is **DISMISSED** pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1), for failure to state a claim upon which relief may be granted. The court **CERTIFIES** that any appeal from this dismissal would not be taken in good faith. 28 U.S.C. § 1915(a)(3).

This is the final order in this action. The Clerk **SHALL** enter judgment. Fed. R. Civ. P. 58(b)(1).

It is so **ORDERED**.

ALETA A. TRAUGER
United States District Judge